UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YOLANDA HENDERSON, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| vs. | |
| U.S PATENT COMMISSION, LTD., THE GRAY LAW GROUP, LTD., INVENT WORLDWIDE CONSULTING, LLC, ALAN GREEN, RON STERLING, CARYN ROHDE, ANGELA STEVENS, CANDICE PAGE, ROBERT GRAY, STEVEN FISHER-STAWINSKI, and XAVIER HAILEY, | |
| Defendants. | |

15 C 3897

Judge Feinerman

**M**EMORANDUM **O**PINION AND **O**RDER

Yolanda Henderson brought this putative class action against U.S. Patent Commission, Ltd. and several of its employees, The Gray Law Group and several of its employees, and two defendants who have been dismissed. Doc. 72. Earlier in the litigation, Defendants moved to compel arbitration, Docs. 33, 36, and the court granted the motion, Docs. 60-61 (reported at 2015 WL 6791396 (N.D. Ill. Nov. 2, 2015)). Now, pursuant to § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, Defendants have moved to direct Plaintiff to proceed to arbitration on an individual, rather than class, basis. Doc. 76. The motion is granted.

**Background**

The relevant facts are set forth in the court's prior opinion, familiarity with which is assumed. To summarize, Henderson, seeking to develop and sell what she believed to be her invention of "glitter paint," entered into two contracts with U.S. Patent Commission, formerly known as Invent Worldwide Consulting. Doc. 72 at ¶¶ 22-25, 31-35. Pursuant to the first

1

agreement, the "Step 1 Agreement," U.S. Patent Commission would perform a search to determine the patentability of Henderson's putative invention. *Id*. at ¶ 28. Defining U.S. Patent Commission and Invent Worldwide Consulting as "Consultants" and Henderson as "Client," the agreement contained the following choice-of-law and arbitration clause:

> This agreement, and all other agreements with Consultants, unless specifically noted otherwise are interpreted in accordance with the laws of the State of Illinois and the County of DuPage. Any and all disputes regarding this or other agreements between Client and Consultants will be subject to binding arbitration and submitted to the AAA (American Arbitration Association) or some other similar organization. …

Doc. 33-2 at 3. Under the second agreement, the "Step 2 Agreement," U.S. Patent Commission would "creat[e] 2D and 3D drawings of the invention, provid[e] [Henderson] with a list of manufacturers, and fil[e] a provisional patent application with the United States Patent and Trademark Office ('USPTO')." Doc. 72 at ¶ 32. The Step 2 Agreement included an arbitration clause identical to that in the Step 1 Agreement. Doc. 33-3 at 4. Henderson paid $100.00 for the services specified in the Step 1 Agreement and $2,600.00 for the services specified in the Step 2 Agreement. Doc. 72 at ¶¶ 28, 31.

Henderson alleges that Defendants conspired to deceive her from discovering that glitter paint was neither patentable nor profitable, violating both federal and state law. Doc. 72. As noted, the court compelled arbitration on November 1, 2015. On February 8, 2016, Henderson filed a demand for arbitration before the JAMS arbitral forum seeking class treatment of her claims. Doc. 77-1.

## Discussion

"An agreement to arbitrate is treated like any other contract," and a "party can be forced to arbitrate only those matters that he or she has agreed to submit to arbitration." *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015). Accordingly,

"a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2067 (2013) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (7th Cir. 2010)) (internal quotation marks omitted). The FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the] court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Defendants have so moved, contending that the Step 1 and Step 2 Agreements do not permit class arbitration. Docs. 76-77. To resolve the motion, the court must address two questions. The first is "*who* should decide whether the Agreements [allow for class] arbitration: [this] court, or the arbitrator?" *Emp'rs Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 576 (7th Cir. 2006). The second, to be reached only if the arbitrability issue is for the court, is whether the Agreements in fact provide for class arbitration.

I. **Whether the Court or the Arbitrator Decides the Availability of Class Arbitration**

"[Q]uestion[s] of arbitrability … which include certain gateway matters, such as whether parties have a valid arbitration agreement or whether a concededly binding arbitration clause applies to a certain type of controversy … are presumptively for courts to decide," *Oxford Health*, 133 S. Ct. at 2068 n.2 (internal quotation marks omitted), "unless the parties clearly and unmistakably provide otherwise," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). To resolve whether the availability of class arbitration is an issue for the court or the arbitrator, the court must first decide whether the availability of class arbitration is a question of arbitrability presumptively for the court. If it is,

3

then the court must decide whether the parties' arbitration agreement clearly and unmistakably provides that the availability for class arbitration is for the arbitrator.

### A. Whether the Availability of Class Arbitration Is a "Question of Arbitrability"

The Supreme Court has "found the phrase ['question of arbitrability'] applicable in the kind of narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Wausau*, 443 F.3d at 576 (quoting *Howsam*, 537 U.S. at 83-84) (internal quotation marks omitted). By contrast, "*procedural* questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide." *Ibid*. (quoting *Howsam*, 537 U.S. at 84) (internal quotation marks omitted).

The Supreme Court "has not yet decided whether the availability of class arbitration is a question of arbitrability." *Oxford Health*, 133 S. Ct. at 2068 n.2; *accord Stolt-Nielsen*, 559 U.S. at 680. The Court came close in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), where a four-Justice plurality expressed the view that the availability of class arbitration was not a question of arbitrability because it concerned "not whether the parties wanted a judge or an arbitrator to decide *whether they agreed to arbitrate a matter*," but instead "what *kind of arbitration proceeding* the parties agreed to." *Id*. at 452 (plurality opinion). In later decisions, however, both the Supreme Court and the Seventh Circuit have emphasized that the *Bazzle* plurality opinion is just that—a plurality—and therefore that it lacks precedential effect. *See Stolt-Nielsen*, 559 U.S. at 680 ("For one thing, the parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class

4

arbitration. In fact, however, only the plurality decided that question.") (citation omitted); *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 639 (7th Cir. 2011) (noting that *Bazzle* "did not produce a majority"); *Wausau*, 443 F.3d at 579 ("[T]here is debate regarding the precedential effect—if any—of the plurality opinion in [*Bazzle*]. We are therefore hesitant to base our decision on it."); *see also Oxford Health*, 133 S. Ct. at 2068 n.2 ("*Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability."); *Dell Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 877 (4th Cir. 2016) (characterizing *Bazzle* as a "thin reed" and declining to rely on it); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 331 (3d Cir. 2014) ("Subsequent Supreme Court decisions … cast doubt on the *Bazzle* plurality's decision.").

*Bazzle* has been cited in only three Supreme Court majority opinions: twice to emphasize that it did not bind the Court as to whether the availability of class arbitration is a question of arbitrability, *see Oxford Health*, 133 S. Ct. at 2068 n.2; *Stolt-Nielsen*, 559 U.S. at 680; and once in a "line of cases" that "merely reflects the principle that arbitration is a matter of contract," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). The Supreme Court has never cited *Bazzle* for the proposition that class arbitrability is a question for the arbitrator.

Nor has the Seventh Circuit decided whether class arbitrability is a gateway issue for the court to decide. In *Wausau* and *BCS Insurance*, the Seventh Circuit held that the availability of *consolidated* arbitration is not a question of arbitrability, but rather a "procedural issue[] … presumptively for the arbitrator to decide." *Wausau*, 443 F.3d at 581; *see BCS Ins. Co.*, 671 F.3d at 638-39 (reaffirming *Wausau*). But those two decisions do not hold the same for *class* arbitration, which were not at issue in either case.

5

Several decisions from this District, while acknowledging that *Wausau* and *BCI Insurance* do not expressly decide the issue, have nevertheless drawn on those cases to find that class arbitrability is a procedural issue for the arbitrator. *See Williams-Bell v. Perry Johnson Registars, Inc.*, 2015 WL 6741819, at *6 (N.D. Ill. Jan. 8, 2015); *Kovachev v. Pizza Hut, Inc.*, 2013 WL 4401373, at *2 (N.D. Ill. Aug. 15, 2013); *Cramer v. Bank of Am., N.A.*, 2013 WL 2384313, at *3-4 (N.D. Ill. May 30, 2013); *Chatman v. Pizza Hut, Inc.*, 2013 WL 2285804, at *6-8 (N.D. Ill. May 23, 2013); *Price v. NCR Corp.*, 908 F. Supp. 2d 935, 941-45 (N.D. Ill. 2012); *State Farm Fire & Cas. Co. v. Pentair, Inc.*, 2012 WL 3904104, at *2-4 (N.D. Ill. Sept. 7, 2012); *Collier v. Real Time Staffing Servs., Inc.*, 2012 WL 1204715, at *5 (N.D. Ill. Apr. 11, 2012). Some of those decisions have read *Champ v. Siegel Trading Co.*, 55 F.3d 269 (7th Cir. 1995), *abrogated on other grounds by Bazzle*, 539 U.S. at 452, as an indication that the Seventh Circuit applies—or would apply—the same arbitrability rules to class arbitration as it does to consolidated arbitration.

In *Champ*, the Seventh Circuit considered "whether a district court has authority to certify an individual plaintiff as a class representative for other similarly aggrieved parties whose claims are subject to arbitration." *Id*. at 271. Perera, the original plaintiff, brought a class action complaint against Siegel and other defendants. The district court ordered Perera to proceed to arbitration; the court also certified her as a class representative in the arbitration proceedings. Upon the defendants' motion for reconsideration, the district court vacated its prior order and held that it lacked authority to certify class arbitration where the parties had not agreed to class arbitration in their arbitration agreement. Perera then settled, and two putative class members intervened to appeal the order denying certification of a class for arbitration. Among other issues, the defendants challenged the court's granting of the motion to intervene. *Ibid*. The

Seventh Circuit rejected the intervenors' argument that their contract with the defendants permitted class arbitration even though the agreement was silent on the issue; in so holding, the court, surveying decisions issued by other circuits, observed that there existed "no meaningful basis to distinguish between the failure to provide for consolidated arbitration and class arbitration." *Id*. at 275. Seizing on this language, some of the above-cited decisions from this District reasoned that because *Champ* cited case law about *consolidated* arbitration to illuminate an issue concerning *class* arbitration, and because *Wausau* and *Blue Cross* held that the availability of consolidated arbitration was procedural and thus not a question of arbitrability, class arbitrability must be procedural as well. *See Price*, 908 F. Supp. 2d at 941-42; *see also Williams-Bell*, 2015 WL 6741819, at *6 (endorsing *Price* without citing *Champ*).

The court respectfully disagrees with that reasoning. *Champ* did not analogize consolidated arbitration to class arbitration for all purposes; rather, it analogized a contract's *failure to provide* for one with a failure to provide for the other. *See Champ*, 55 F.3d at 275. That limited congruence "merely reflects the principle that arbitration is a matter of contract." *Rent-A-Ctr.*, 561 U.S. at 68-69. And more recent case law undermines the notion that the Seventh Circuit views consolidated and class proceedings as comparable, let alone identical in other respects. Specifically, *BCI Insurance* discusses the distinction between the two at length:

> Class actions always have been treated as special. One self-selected plaintiff represents others, who are entitled to protection from the representative's misconduct or incompetence. Often this requires individual notice to class members, a procedure that may be more complex and costly than the adjudication itself. See *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974). As a practical matter the representative's small stake means that lawyers are in charge, which creates a further need for the adjudicator to protect the class. Finally, class actions can turn a small claim into a whopping one. Unsurprisingly, Fed. R. Civ. P. 23 imposes stringent requirements on class certification. Consolidation of suits that are going to proceed anyway poses none of these potential problems. That's why Fed. R. Civ. P. 42(a) leaves to a district judge's discretion—and without any of Rule 23's procedures and

7

> safeguards—the decision whether to consolidate multiple suits. Just as consolidation under Rule 42(a) does not change the fundamental nature of litigation, so consolidation of the plans' claims would not change the fundamental nature of arbitration.

671 F.3d at 640; *see also Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) (distinguishing class actions from non-class actions).

In the absence of directly controlling precedent from the Supreme Court or the Seventh Circuit on the issue at hand, this court looks to persuasive authority. The Third, Fourth, and Sixth Circuits have held that class arbitrability is a question of arbitrability, and thus a decision presumptively for the court rather than the arbitrator. *See Dell Webb*, 817 F.3d at 873-77; *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 754-58 (3d Cir. 2016); *Opalinski*, 761 F.3d at 331-36; *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 597-99 (6th Cir. 2013). By contrast, the Fifth Circuit recently reaffirmed an earlier decision holding that "when an agreement includes broad coverage language, such as a contract clause submitting '*all* disputes, claims or controversies arising from or relating to' the agreement to arbitration, then the availability of class or collective arbitration is an issue arising out of the agreement that should be determined by the arbitrator." *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 196 (5th Cir. 2016) (quoting *Pedcor Mgmt. Co. Inc. Welfare Benefit Plan v. Nat'ns Personnel of Tex., Inc.*, 343 F.3d 355, 358 (5th Cir. 2003)). Because the arbitration clause here provides that "[a]ny and all disputes regarding this or other agreements between Client and Consultants will be subject to binding arbitration," Doc. 33-2 at 3; Doc. 33-3 at 4, Fifth Circuit precedent would dictate that the availability of class arbitration is a procedural question presumptively for the arbitrator, while Third, Fourth, and Sixth Circuit precedent would dictate that it is an arbitrability question presumptively for the court.

In this court's view, the Third, Fourth, and Sixth Circuits' view is more consistent with Supreme Court and Seventh Circuit precedent than is the Fifth Circuit's view. In *Stolt-Nielsen*, the Supreme Court explained that "class-action arbitration changes the nature of arbitration":

> Consider just some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration. An arbitrator chosen according to an agreed-upon procedure no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties. Under the [AAA's] Class Rules, "the presumption of privacy and confidentiality" that applies in many bilateral arbitrations "shall not apply in class arbitrations," thus potentially frustrating the parties' assumptions when they agreed to arbitrate. The arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well. And the commercial stakes of class-action arbitration are comparable to those of class-action litigation, even though the scope of judicial review is much more limited.

559 U.S. at 685, 686-87 (citations omitted). Likewise, in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Court held: "Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes. Confidentiality becomes more difficult. And while it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties." *Id*. at 348. As these passages make clear, unlike the consolidated arbitration in *BCI Insurance*, class arbitration "change[s] the stakes." *BCI Ins.*, 671 F.3d at 639; *compare id*. at 639 ("[W]hether it would be simpler and cheaper to handle twelve claims separately or together is the sort of issue an adjudicator—whether judge or arbitrator—resolves all the time."), *with Crockett*, 734 F.3d at 598 ("[W]hether the parties arbitrate one claim or 1,000 in a single proceeding is no mere detail.").

Also pertinent to the discussion is the extremely limited judicial review of arbitral decisions, which "makes it more likely that errors will go uncorrected," including errors in

9

deciding whether the parties had agreed to class arbitration. *Concepcion*, 563 U.S. at 350. As the Supreme Court observed: "Defendants are willing to accept the costs of these errors in [bilateral] arbitration, since their impact is limited to the size of individual disputes and presumably outweighed by savings from avoiding the courts. But when damages allegedly owed to tens of thousands of potential claims are aggregated and decided at once, the risk of an error will often become unacceptable." *Ibid*. The Seventh Circuit has noted similar concerns. *See BCI Ins.*, 671 F.3d at 640 ("[C]lass actions can turn a small claim into a whopping one."); *cf. In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995) (refusing to certify a nationwide class because doing so would "forc[e] the[] defendants to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability"). For this reason, as the Sixth Circuit observed, "the question whether the parties agreed to classwide arbitration is vastly more consequential than even the gateway question whether they agreed to arbitrate bilaterally." *Crockett*, 734 F.3d at 599.

In short, the Supreme Court's decisions since *Bazzle* have taken pains to emphasize that the distinction between bilateral and class arbitration is one not of degree but of type. Thus, the "Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question" presumptively for the court rather than for the arbitrator. *Id*. at 598; *see also Dell Webb*, 817 F.3d at 875 ("The evolution of the [Supreme] Court's cases are but a short step away from the conclusion that whether an arbitration agreement authorizes class arbitration presents a question as to the arbitrator's inherent power, which requires judicial review."). This conclusion is consistent with the Seventh Circuit's and the Supreme Court's recent emphasis on the stark contrasts between class actions and other legal proceedings in terms of the stakes to the parties, the character of the litigation, and the role of the adjudicator. Taken together, the thrust

is clear: class arbitrability is not merely "procedural." *Wausau*, 443 F.3d at 577 (quoting *Howsam*, 537 U.S. at 84). It does not "grow out of the dispute," *ibid*. (quoting *Howsam*, 537 U.S. at 84), but rather defines it. And because the "Supreme Court has made clear that defining the limits of arbitral jurisdiction is generally the function of courts, not arbitrators," *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 514 (7th Cir. 1992), class arbitrability is presumptively the province of the court, not the arbitrator.

Finally, the persuasive value of the Fifth Circuit's contrary decision in *Robinson* is quite limited, as the Seventh Circuit in *Wausau* disapproved of the Fifth Circuit's earlier decision in *Pedcor Management Co. Welfare Benefit Plan*, on which *Robinson* heavily relied. *See Robinson*, 817 F.3d at 197 ("[T]he rule of orderliness mandates that *Pedcor Management* is controlling, and we are bound to apply it and its clear rule of law."). *Pedcor* reasoned that Justice Stevens's concurrence in *Bazzle* agreed with the plurality that class arbitrability is presumptively a question for the arbitrator, thus granting that position the five votes needed to make a precedential holding. 343 F.3d at 358-59; *see also Robinson*, 817 F.3d at 196 (noting that *Pedcor* "adopted [*Bazzle*'s] reasoning"). In *Wausau*, the Seventh Circuit expressly disagreed with *Pedcor*'s reading of Justice Stevens's concurrence: "We cannot conclude, as the Fifth Circuit did, that Justice Stevens agreed that the arbitrator should be the first to interpret the parties' agreements to determine if they allow class arbitration. … We choose not to identify the controlling rationale of [*Bazzle*] by presuming how Justice Stevens would have decided the issue if the parties had actually raised it." *Wausau*, 443 F.3d at 580-81. Because *Robinson* rests on *Pedcor*, the reasoning of which the Seventh Circuit (and, in its treatment of *Bazzle*, the Supreme Court) has disavowed, *Robinson* is not persuasive. And although Henderson attempts to explain away *Wausau*'s disapproval of *Pedcor* by noting that *Wausau* dealt with consolidated rather than

11

class arbitration, Doc. 80 at 5 n.3, the Seventh Circuit's disapproval had nothing to do with that distinction and everything to do with what it felt to be the Fifth Circuit's inaccurate reading of *Bazzle*. *See Wausau*, 443 F.3d at 581.

Henderson also contends that the Third, Fourth, and Sixth Circuit decisions are distinguishable because the arbitration clauses in those cases either did not direct the parties to bring their disputes to a specific arbitral forum, *see Opalinski*, 761 F.3d at 329, or were limited to disputes arising from a single customer's lease agreement, *see Chesapeake Appalachia*, 809 F.3d at 749; *Crockett*, 734 F.3d at 599. Doc. 80 at 5-6 & n.4. This argument misses the mark for two reasons. First, the distinctions cited by Henderson are illusory. Although the arbitration clause in the Step 1 and Step 2 Agreements refers to a specific arbitral forum, the American Arbitration Association, it *also* states that the parties may bring their disputes to "some other similar organization," as they actually have done in this case, selecting JAMS. Doc. 33-2 at 3; Doc. 33-4 at 4; Doc. 77-1. Likewise, the arbitration clause refers to "disputes regarding this or other agreements between Client and Consultants," Doc. 33-2 at 3; Doc. 33-4 at 4; this echoes the clauses in *Chesapeake Appalachia*, which referred to claims "concerning this lease," 809 F.3d at 749, and the one in *Crockett*, which governed claims "arising from or in connection with this Order," 734 F.3d at 599. Second, even if the arbitration clause here differs from the ones in *Opalinski*, *Chesapeake Appalachia*, and *Crockett*, Henderson has not explained why those differences warrant the court's disregard of the legal principles from those cases.

For these reasons, the availability of class arbitration is a question of arbitrability presumptively for the court, not for the arbitrator.

12

## B. Whether the Arbitration Clause "Clearly and Unmistakably" Provides that the Arbitrator Decides the Availability of Class Arbitration

Questions of arbitrability presumptively for the court can nonetheless be submitted to the arbitrator if "the parties clearly and unmistakably provide[d]" that they should be. *Howsam*, 537 U.S. at 83 (internal quotation marks omitted); *see also Rent-A-Ctr.*, 561 U.S. at 68-69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). The parties here, however, did not do so.

Courts "evaluate agreements to arbitrate under the same standards as any other contract," *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002), including "all general principles of state law," *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013). But "[w]hile the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." *Stolt-Nielsen*, 559 U.S. at 681 (citations and international quotation marks omitted). Under Illinois law, which governs the Step 1 and Step 2 Agreements, 2015 WL 6791396, at *3, "[i]f a contract is clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014) (internal quotation marks omitted).

As noted, the arbitration clause in the Step 1 and Step 2 Agreements states:

> This agreement, and all other agreements with Consultants, unless specifically noted otherwise are interpreted in accordance with the laws of the State of Illinois and the County of DuPage. Any and all disputes regarding this or other agreements between Client and Consultants will be subject to binding arbitration and submitted to the AAA (American Arbitration Association) or some other similar organization.

Doc. 33-2 at 2; Doc. 33-4 at 4. The clause does not explicitly refer to class arbitration at all, let alone to who shall decide whether there can be class arbitration. Henderson nevertheless

contends that "under traditional contract interpretation rules … [t]he parties' contract expresses their intent to have the arbitrator decide the question of classwide arbitration by incorporating the arbitration forum's rules on the question of class arbitration." Doc. 80 at 12.

This argument fails to persuade. "For a contract to incorporate all or part of another document by reference, the reference must show an intention to incorporate the document and make it part of the contract." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (internal quotation marks omitted); *see also Wiczer v. Wojciak*, 30 N.E.3d 670, 680 (Ill. App. 2015) (same). The clause here provides in relevant part that disputes "will be subject to binding arbitration and submitted to the AAA (American Arbitration Association) or some other similar organization." Even assuming that an arbitration clause's direction that arbitration take place before a particular arbitral forum, without *explicitly* stating that the forum's rules shall apply, incorporates by reference that forum's rules, the clause here does *not* require the parties to arbitrate their disputes using a specific arbitral forum. Instead, the clauses require arbitration before the "AAA … *or* some other similar organization" (emphasis added).

Indeed, Henderson has chosen to proceed before the JAMS arbitral forum. Doc. 77-1; Doc. 80 at 12. Thus, even if Henderson were right that JAMS "has a virtually identical rule to [the] AAA" concerning class arbitrability, *ibid.*, the fact that the parties are proceeding under a set of rules different from the AAA rules demonstrates that the arbitration clause does not incorporate the AAA rules, much less incorporate them "clearly and unmistakably." *Howsam*, 537 U.S. at 83 (internal quotation marks omitted); *see also First Options of Chi. v. Kaplan*, 514 U.S. 938, 945 (1995) ("[G]iven the principle that a party can be forced to arbitrate only those issues it has specifically agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide point' as giving arbitrators

14

that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide."). And even if the rules of JAMS and the AAA committed to the arbitrator the question whether class arbitration is available, Henderson has not shown, or even argued, that all "similar organizations" to the AAA do the same.

Finally, Henderson contends that the law of the case doctrine precludes Defendants from arguing that the court rather than the arbitrator should decide class arbitrability. Doc. 80 at 2. "The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (internal quotation marks omitted); *see also Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) (same). Henderson argues that because Defendants' motion to compel arbitration asserted in a footnote that the court should decide class arbitrability, Doc. 37 at 21 n.9, the fact that the court's opinion granting the motion did not state that the court should decide class arbitrability "implicitly reject[ed]" Defendants' argument. Doc. 80 at 2.

That argument is frivolous. The court's opinion on the motion to compel arbitration does not discuss, mention, or even allude to class arbitration. And the court's minute order denying without prejudice Henderson's class certification motion states that it "does not speak, one way or the other, to whether class arbitration is permitted or appropriate." Doc. 71. The law of the case doctrine does not apply to an issue like this one that the court has not decided. *See Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1032 (7th Cir. 1997) ("Law of the case is limited insofar as it applies only to issues that were decided in the former proceeding but not to questions which might have been decided but were not."); *Parts & Elec. Motors, Inc. v. Sterling*

15

*Elec., Inc.*, 866 F.2d 228, 231 (7th Cir. 1988) ("As a general rule, the [law-of-the-case] doctrine does not … include questions present in a case and which might have been decided but were not.").

## II. Whether the Parties' Agreements Make Class Arbitration Available

Having resolved that the availability of class arbitration is a question for the court, not the arbitrator, the court now must address whether the Step 1 and Step 2 Agreements permit class arbitration. As noted, the court applies general principles of state contract law, subject to the Supreme Court's admonition that "arbitration is a manner of consent, not coercion." *Stolt-Nielsen*, 559 U.S. at 681 (international quotation marks omitted).

The agreements indisputably do not *expressly* permit class arbitration. Defendants argue that the agreements do not *implicitly* permit class arbitration either, contending that they are complete and unambiguous contracts that, through their reference to "this or other agreements between Client and Consultants," indicate an agreement to arbitrate disputes only on a bilateral basis. Doc. 77 at 22-25; Doc. 82 at 14-15. Henderson retorts that the agreements implicitly permit class arbitration. She sets forth three grounds, all without merit.

First, Henderson contends that "Defendants do not cite any language in the arbitration provisions of either contract expressly or implicitly limiting class arbitration," and therefore that Defendants seek "to rewrite the parties' agreements to include a class arbitration waiver when no such provision actually exists." Doc. 80 at 13. This argument flatly ignores binding precedent, which holds that silence *cannot* be taken as evidencing the parties' agreement to class arbitration. *See Concepcion*, 563 U.S. at 347 (observing that "the agreement at issue" in *Stolt-Nielsen*, "which was silent on the question of class procedures, could not be interpreted to allow them because the changes brought about by the shift from bilateral arbitration to class-action

16

arbitration are fundamental") (internal quotation marks omitted); *Stolt-Nielsen*, 559 U.S. at 685 (holding that class arbitration "changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator"); *id*. at 687 ("[T]he differences between bilateral and class-action arbitration are too great … to presume … that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings."); *Champ*, 55 F.3d at 275 ("[S]ection 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter.").

Second, Henderson argues that a clause permitting the arbitration of bilateral disputes cannot by itself exclude class arbitration, because otherwise class actions could never "aris[e] out of contract claims." Doc. 80 at 13; *see Harrison v. Legal Helpers Debt Resolution, LLC*, 2014 WL 4185814, at *6 (D. Minn. Aug. 22, 2014) ("Phrases such as 'between Client and LHDR' and 'this Agreement' are routine contract terms that do not expressly disclaim class litigation. All contracts are necessarily written between the parties to a transaction; if the identification of the parties or reference to 'this agreement' precluded class litigation, class claims could never stem from contracts."). This argument also ignores governing precedents. The arbitration clause in *Stolt-Nielsen* contained similar bilateral language. *See Stolt-Nielsen*, 559 U.S. at 667 ("any dispute arising from … this Charter Party"). In *Stolt-Nielsen*, the parties stipulated that the clause was silent as to class arbitration, and the Court held that this silence precluded class arbitration. 559 U.S. at 668, 687; *see also Concepcion*, 563 U.S. at 347. *Stolt-Nielsen* thus establishes that: (1) bilateral arbitration language such as that in the Step 1 and Step 2 Agreements is silent as to the issue of class arbitration; and (2) silence is not sufficient to permit class arbitration. (In *Oxford Health*, addressing an arbitral ruling that the arbitration clause

permitted class arbitration, the Court declined to overturn the arbitrator "because, and only because, [the question] is not properly addressed to a court," and emphasized that "[n]othing we say in this opinion should be taken to reflect any agreement with the arbitrator's contract interpretation or any quarrel with Oxford's contrary reading." 133 S. Ct. at 2070.)

Third, Henderson again contends that the agreements incorporate by reference AAA rules addressing class arbitration. Doc. 80 at 13-14. For the reasons set forth above, this argument misses the mark. Further, as Defendants note, Doc. 82 at 14-15, AAA Supplementary Rule 3 expressly forbids an arbitrator "to consider the existence of these Supplementary Rules … to be a factor in favor of or against permitting the arbitration to proceed on a class basis." AAA Supp. Rule 3, https://perma.cc/5AYT-26ZU. So although the court need not and does not reach the issue, it would appear that even if the Step 1 and Step 2 Agreements incorporated the AAA rules, which they do not, those rules would not permit an inference that an otherwise silent arbitration clause permits class arbitration.

## Conclusion

Defendants' motion to compel Henderson to proceed to arbitration on an individual basis is granted. Henderson must proceed with an individual arbitration and may not pursue class arbitration. This suit remains stayed pending conclusion of the arbitration.

May 27, 2016

United States District Judge

18